| | |
|---|---|
| THE DANIEL GROUP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| SERVICE PERFORMANCE GROUP, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant's motion for attorneys' fees (DE # 32). Plaintiff responded in opposition, and defendant filed a reply. In this posture, the issues raised are ripe for review. For the following reasons, the court denies defendant's motion.

## STATEMENT OF THE CASE[1]

Plaintiff is a provider of consulting services throughout the United States and Canada. Since 2005, plaintiff marketed its consulting service under the service mark "SERVICEPERFORMANCE," which it registered with the United States Patent and Trademark Office ("USPTO") as U.S. Service Mark No. 3,457,247, on July 1, 2008. Defendant specializes in consulting in the customer satisfaction services field, and offers mystery shopping services to its clients. Defendant operates under the name, "SERVICE PERFORMANCE GROUP." Defendant has operated its business since 1992 under the marks, "SERVICE PERFORMANCE GROUP" and "SPG." The officers and sole shareholders of defendant, Jerry and Melissa Guyles, began the

---

[1] Although laid out in detail in the court's order on defendant's motion for summary judgment, lodged on the docket at entry 25, the court reiterates, in pertinent part, the facts of the case.

business as a husband and wife team. In 1999, the Guyles incorporated their business in Illinois, forming Service Performance Group, Inc. ("SPGI-Ill").

SPGI-Ill continued to offer customer satisfaction services under the SERVICE PERFORMANCE GROUP and SPG marks. When the Gulyes moved to North Carolina, SPGI-Ill was administratively dissolved in June of 2005. For a time after the dissolution of SPGI-Ill, the Gulyes operated their company "as a d/b/a" and continued to use the SERVICE PERFORMANCE GROUP and SPG marks for the same services. In July 2008, the Gulyes re-incorporated their company, Service Performance Group, Inc. (defendant), in North Carolina. Defendant continued to offer the same services that the Illinois corporation offered and used the same identifying names and marks.

When plaintiff applied for its trademark registration, the Trademark Examining Attorney at the USPTO conducted a search to see if any similar marks existed that would prevent plaintiff from receiving its federal registration. The examining attorney determined that no such marks existed. After discovering defendant's use of a similar mark to plaintiff's, on December 15, 2009, plaintiff sent a cease and desist letter to defendant's registered agent requesting that defendant cease using plaintiff's mark, "SERVICEPERFORMANCE" and a name that is similar to plaintiff's mark. On January 13, 2010, the Gulyes assigned "all rights and interests they might have in and all goodwill they may own associated with the service mark SERVICE PERFORMANCE GROUP . . . to include all such trademarks and all trade dress rights . . . that were or are owned by SPGI-Ill" to defendant. On January 14, 2010, defendant refused to cease using the name SERVICE PERFORMANCE GROUP. Plaintiff instigated this action on March 8, 2010.

Plaintiff filed a complaint against defendant alleging trademark infringement under the

2

Lanham Act, 15 U.S.C. §§ 1051 et. al., common law trademark infringement, violation of the prohibition against unfair and deceptive trade practices in North Carolina General Statutes § 75-1.1, common law unfair competition, and federal unfair competition and false advertising. Defendant answered and asserted various counterclaims against plaintiff, including unfair competition under 15 U.S.C. § 1125(a), unfair business practices and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, and cancellation of plaintiff's United States trademark registration. Both plaintiff and defendant sought injunctive and monetary relief.

On June 7, 2010, defendant made a motion for summary judgment. On June 22, 2010, this court entered a case management order ("CMO") in which it bifurcated discovery into two phases. On November 10, 2010, the court granted defendant's motion for summary judgment on the issue of liability, North Carolina unfair/deceptive trade practices, and unfair competition. On January 20, 2011, upon joint motion of the parties, the court entered permanent injunction and final judgment in favor of defendant, ordering that plaintiff is permanently enjoined from using the mark SERVICE PERFORMANCE or any mark confusingly similar thereto for so long as defendant has not abandoned its mark. On February 4, 2011, defendant moved for attorneys' fees under the Lanham Act and under North Carolina General Statutes § 75-16.1.

## ANALYSIS

Defendant has moved for attorneys' fees, arguing that fees are warranted because plaintiff knew defendant was the senior user, plaintiff offered arguments in support of its case that were contrary to established law, plaintiff engaged in meritless commercial litigation, and the amount of fees requested is reasonable. Defendant argues that attorneys' fees are warranted particularly because it is a small business that has struggled in the recession, while plaintiff is a successful,

3

rapidly growing business. Defendant states that in defending against plaintiff's claims it has incurred attorneys' fees in the amount of $41,606.56. Plaintiff has responded in opposition, arguing that it asserted colorable claims against defendant and that the claims were not asserted for an improper purpose.

A.  Attorneys' Fees Under the Lanham Act

Section 35(a) of the Lanham Act provides that a court may award attorneys' fees to the prevailing party in "exceptional cases." Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1992) (citing 15 U.S.C. § 1117(a)). The Fourth Circuit has held that a prevailing defendant needs to show "something less than bad faith" to prove an exceptional case under the Lanham Act for fees to be awarded. Id. While this standard is not especially clear, the Fourth Circuit has affirmed a district court's award of attorneys' fees under the Lanham Act when the court found the plaintiff alleged erroneous facts due to reliance on a form complaint, failed to tailor its factual allegations to fit the case, withdrew a federal anti-dilution claim after defendant pointed out the claim's inapplicability, and plaintiff was a successful company that employed its resources to hinder defendant's business venture. Ale House Management, Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 144 (4th Cir. 2000). In Ale House, the Fourth Circuit further noted that "[a]wards of attorneys fees under [the Lanham Act] are not to be made as a matter of course, but rather as a matter of the court's considered discretion." Id.

Defendant first argues that attorneys' fees are appropriate because plaintiff put forth arguments that were contrary to established law. When analyzing whether attorneys' fees are appropriate, the court must consider the arguments defendant made as a whole. See Retail Servs. Inc. v. Freebies Publishing, 364 F.3d 535, 550-551 (4th Cir. 2004) ("The question, however, is not

4

whether snippets of the record or isolated arguments clearly lack merit. [The court] must determine, in light of the entire case, whether defendants' claims and assertions were so lacking in merit that the action as a whole was "exceptional."). While it is true that plaintiff's arguments with regard to priority were unsuccessful, the court cannot say that as a whole, plaintiff put forth arguments that were contrary to law. While plaintiff was incorrect in asserting that its federal registration of the mark established its priority, there were complicating factors present regarding the change in corporate ownership of defendant's business. As the court acknowledged in its order granting summary judgment to defendant, there is limited case law specifically addressing the effect of changes of corporate status on trademark ownership. With regard to the issue of the validity of the Guyles' assignment of the trademark and the transfer of a trademark after a change in corporate ownership, neither party cited binding precedent. Both parties put forth legal arguments, and while the court found the authority cited by defendant more analogous to the present case, it cannot hold that the arguments put forth by plaintiff with regard to the change of corporate status on trademark ownership were so meritless as to make the case an "exceptional" one, warranting attorneys' fees. Id.[2]

Additionally, while plaintiff's claims were unavailing, the court does not find that it engaged in "meritless commercial litigation." Defendant makes much of the fact that plaintiff pursued litigation despite defendant's assertions prior to litigation that it had established prior use of the mark. While the court ultimately agreed with defendant, in particular relying on the fifty-one (51) declarations from individuals who note they had known and worked with defendant from

---

[2] In its motion for attorneys' fees, defendant repeatedly notes that an independent third-party internet commentator has remarked on the futility of plaintiff's claims. These comments have no precedential effect on the legal issues discussed herein and are not considered in the court's disposition of the instant motion.

5

approximately 1995 to the present, plaintiff did not have the benefit of those declarations until they were filed in August of 2010. Additionally, defendant argues that plaintiff pursued meritless litigation after defendant provided plaintiff with a copy of the Guyles' assignment of the mark. Plaintiff, however, challenged the validity of the assignment, believing the assignment was done hurriedly and was not legally binding. While plaintiff's argument was unavailing, the court will not penalize plaintiff for asserting it.

On the whole, plaintiff's conduct throughout litigation does not illustrate that it brought the lawsuit for an improper purpose or that it was attempting to use the lawsuit to strong-arm defendant.[3] Looking at the trajectory of the case, plaintiff agreed to put into place scheduling mechanisms that would move the case along at a more efficient rate. Complaint was filed March 8, 2010, and on June 7, 2010, before discovery commenced, defendant moved for summary judgment. Plaintiff agreed to bifurcated discovery which allowed for a speedier determination of the liability issue. Additionally, after the court granted summary judgment in favor of defendant, plaintiff agreed to an injunction and entry of judgment in favor of defendant, and voluntarily cancelled its registration with the USPTO and agreed to a dismissal of the Trademark Trial and Appeal Board proceeding.[4]

---

[3] One of plaintiff's arguments that it was not attempting to strong-arm defendant is that plaintiff and defendant are not competitors. The court agrees with defendant, that since plaintiff originally sued defendant for unfair competition, plaintiff cannot now attempt to argue that it is not a competitor. However, as to defendant's assertions regarding the employment application of Angela Baakko, a former employee of plaintiff who evidently submitted an employment application with defendant after litigation began, plaintiff has asserted that it was unaware of Ms. Baakko's application until defendant filed the present motion, and the court does not find this circumstantial evidence to be suggestive that plaintiff was trying to strong-arm a competitor in the field.

[4] The court does not agree with defendant's contention that plaintiff's filing of a federal lawsuit while the USPTO cancellation proceeding was pending is evidence of plaintiff engaging in meritless commecial litigation. Defendant cites no authority for its contention, and the discovery plan for the USPTO proceeding shows that discovery was scheduled to continue in that matter until October 2010. Discovery in the present case was bifurcated so that the liability issue could be decided first. Arguably, this is a more efficient resolution of the parties' dispute; at the very least, it suggests that plaintiff was not using federal litigation as a means to coerce or strong-arm defendant by unnecessarily prolonging discovery.

A review of cases from this circuit supports the court's finding on this issue. Cases in which a plaintiff's conduct has risen to the "exceptional" level, warranting attorneys' fees, have involved more egregious conduct. See, e.g., San Francisco Oven, LLC v. Fransmart, Inc., 222 F. App'x 235, 237 (4th Cir. Mar. 9, 2007) (finding the losing party brought a Lanham Act claim solely to avoid dismissal for lack of subject matter jurisdiction and that it pursued this claim without any factual or legal support); U.S. Gates Intern., LLC v. Light Star Travel Agency, Inc., 2010 WL 5300822, at *2-3 (E.D.Va., Dec. 22, 2010) (noting that cases in which attorneys' fees have been awarded to a prevailing defendant under the Lanham Act generally suggest that "fees are awarded when there is some conduct beyond the litigation of a plausible, though ultimately unavailing, legal claim"); In re Outsidewall Tire Litig., 748 F.Supp. 2d 557, at *4 (E.D.Va, Oct. 28, 2010) (finding that the infringing party thought they could continue infringing with impunity because they thought the prevailing party "would die or run out of money first"); Flexible Benefits Council v. Feltman, 2009 WL 1351653, at *4 (E.D.Va. May 14, 2009) (finding that a party admitted that they created an infringing website address with an intent to obtain the plaintiff's profits). None of the conduct noted above is present here, and keeping in mind that "[a]ttorney's fees are an extraordinary remedy applied only in those exceptional cases in which the [c]ourt finds, in its discretion, that they are warranted," the court finds that plaintiff did not engage in meritless commercial litigation warranting an award of attorneys' fees. U.S. Gates Intern, 2010 WL 5300822, at *3. Accordingly, defendant's motion for attorneys' fees under the Lanham Act is DENIED.

B.  Attorneys' Fees Under North Carolina Law

Defendant also seeks attorneys' fees under North Carolina General Statutes § 75-16.1, which provides that in any suit instituted by a person who alleges that defendant violated N.C. Gen. Stat.

§ 75-1.1, the presiding judge may, in her discretion, allow a reasonable attorney fee to the attorney representing the prevailing party upon a finding by the judge that "[t]he party instituting the action knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1(2). Based on the foregoing discussion, despite the fact plaintiff raised claims that ultimately failed, the court does not find that plaintiff knew or should have known the action was frivolous or malicious. Accordingly, defendant's motion for attorneys' fees under N.C. Gen. Stat. § 75-16.1 is DENIED.

## CONCLUSION

For the foregoing reasons, defendant's motion for attorneys' fees (DE # 32) is DENIED. The Clerk is DIRECTED to close this case.

SO ORDERED, this the 19th day of May, 2011.

LOUISE W. FLANAGAN  
Chief United States District Judge

8